David M Shipp
Montgomery, AL 36108

In The United States Court of Appeals
For the Second Circuit

| | |
|---|---|
| DAVID M SHIPP, Pro Se | Appeal No.25-2996 |
| Appellant,<br>vs. | Draft Extension of Time Request-Motion to Set Aside June 24, 2026 Deadline to Case Manager Yenni Liu |
| XAVIER BECERRA, Secretary of Health and Human Services | |
| Appellee. | |

## APPEAL FROM THE
## UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF NEW YORK

i

## Table of Contents

Draft Extension of Time Request-Motion to Set Aside June 24, 2026 Deadline..............................................................................2

ii

## TABLE OF AUTHORITIES

Cases

Ripalda v. American Operations Corp.,
977 F. 2d 1464, 1466 (D.C. Cir. 1992)...................................3

Rules

FRAP 3(c)(7)...........................................................................3

**Draft Extension of Time Request-Motion to Set Aside June 24, 2026 Deadline**

To Case Manager Yenni Liu:

For the following reasons, the Appellant is filing this draft extension of time request so that he can file a motion for an extension of time request from the April 28, 2026 deadline to set aside the June 24, 2026 deadline for an informal brief that was announced in a March 25, 2026 court order, in light of the April 26, 2026 deadline to alter and amend the April 07, 2026 court order and the May 11, 2026 deadline; the Appellant just completed that draft extension of time request and then sent it to this Court's clerk's office by April 24, 2026 heading into April 27, 2026. The Appellant would like to see ask this Court's clerk for copies of a stack of T-1080 Forms and to see if it's possible for him to receive copies of a stack of T-1080 Forms from this Court's clerk's office, as an earlier copy provided to him by this Court's clerk's office in December 2025 are now out.

The defendant agency has already defaulted on multiple past occasions and court staff seem protective of the government's rights but are disregarding protections due the

Appellant, as a pro se litigant, see Enron Oil Corp. v. Diakuhara, 10 F. 3d 90, 96 (2nd Cir. 1993) ("A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge"); a legal error is that Judge Stanton failed to protect the Appellant, partly by disregarding all of the Appellant's court filings, acting as a first-resort to dismiss the Appellant's case, and disregarding relevant circuit precedent.

The Appellant's court filings just prior to March 25, 2026 were pending draft motions for extension of time requests so that he could prepare and then file a motion for an extension of time request to ask this Court's clerk's office to invoke procedural requirements that come from at least FRAP 8(a)(1)(A), FRAP 12.1(b), FRAP 8(a)(2)(A)(i) FRAP 4(a)(4)(B)(i) FRAP 4(a)(5)(B) FRAP 4(a)(7)(A)(ii). The Appellant was also working to include his first sanction requests within that court filing. The procedural requirements of FRAP 12.1(a) could not be invoked by the US district court below or a neutral arbiter at the US district court below, because Judge Stanton failed to adhere to the procedural requirements of Rule 62.1(c), in response to November 22, 2025, November 24, 2025, and November 25, 2025 court filings from the Appellant and his request for a neutral arbiter, see Myles v. Astrue, 582 F.3d 672, 677 (7th Cir. 2009) ("But the ALJ was required by Social Security Rulings to consider explanations for instances where Myles did not keep up with her treatment, and he did not do so. See SSR 96-7p, *7; see also Moss, 555 F.3d at 562").

Statements from Judge Stanton's November 17, 2025 court order are inconsistent with how the Appellant made contact with this Court on October 14, 2025 and then being told to email the US district court below; statements from Judge Stanton's November 17, 2025 court order are inconsistent with the the Appellant's actions having invoked FRAP 4(d) these draft extension of time requests occurred after January 12, 2026. It then became the Appellant's presumption that Case Manager Yenni Liu had been allowing him to substitute his draft extension of time requests for his extension of time requests for both the sake of allowing him to complete his extension of time request, because the February 03, 2026 court order had not mentioned either of these issues, and the very nature of his upcoming extension of time requests and sanction request that the Appellant described in the drafts, when the March 25, 2026 court order from someone else suddenly and inexplicably appeared setting a June 24, 2026 deadline for his informal brief.

Such actions by this clerk's office for this Court have otherwise represented a surprise for the Appellant following a long litigation history of similar surprises. While the Appellant awaited the resolution of his draft extension of time and sanction requests so that he could attempt to invoke the procedural requirements of , the Appellant may have invoked the procedural requirements of with the draft extension of time requests that he'd already submitted. By seemingly having left all of the Appellant's pending motions unresolved in order to set the June 24, 2026 deadline for an informal brief from the Appellant, the clerk's office for this Court would have simply disregarded all of the Appellant's court filings or construed all of the Appellant's court filings far too narrowly

so the Appellant's concern for partiality before Case Manager Yenni Liu took over this case has returned; because Chief Judge Swain and Judge Stanton disregarded all of his court filings, the Appellant's case is on appeal because they disregarded circuit precedent such as.

mockThis draft motion for extension of time to have the June 24, 2026 deadline that was named in the March 25, 2026 court order for his informal brief set aside is possibly being filed pursuant to at least FRAP 8(a)(1)(C). FRAP 8(a)(1)(C) reads "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending". The Appellant would also like the following described bases or procedural irregularities to be preserved for a General Counsel at the FLRA, once that post is filed, as also relating to the actions and/or inactions of the exclusive bargaining representative of the FDA, NTEU, as these events are/were unfolding; their actions and/or inactions throughout the litigation history of this case both include and predate this case, this case at the US district court below, the MSPB prior to July 16, 2007, and before the Appellant was displaced from his position within the federal service.

The Appellant had been working on a final version of his extension of time request and was still awaiting the final resolution of those a draft items, when the March 25, 2026 court order was entered. The March 25, 2026 court order does not mention Case Manager Liu. The Appellant's draft extension of time request that was sent to Case Manager Liu on February 02, 2026 had also described his desire to invoke the procedural requirements of FRAP 8(a)(1)(A), FRAP 12.1(b), and FRAP 12.1(a) in a future court filing, in the event that she/this Court had granted the extension of time request that he still needed to finish preparing by March 25, 2026. The Appellant then made a follow up to that February 02, 2026 draft extension of time request on March 09, 2026, after a court order entered by Case Manager Liu on February 03, 2026 had not acknowledged the extension of time aspect of his February 02, 2026 court filing.

It just recently came to the Appellant's notice after March 25, 2026 that his November 22, 2025 and November 24, 2025 court filings that were intended for the US district court below may have already invoked the procedural requirements of 62.1(c) and 62.1(b) of the Federal Rule of Civil Procedure at the US district court below, incidentally, due to that court order mentioning a January 16, 2026 court order from Judge Stanton. Rule 62.1(c) reads "Remand. The district court may decide the motion if the court of appeals remands for that purpose" and Rule 62.1(b) reads "Notice to the Court of Appeals. The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue".

The Appellant can also note that the issue of his possible invocation of the procedural requirements of FRAP 8(a)(1)(A), FRAP 12.1(b), and FRAP 12.1(a) in a future court filing were also raised in a December 30, 2025 draft extension of time request, providing that this Court had given him an opportunity to prepare and then submit his extension of time request that was his December 30, 2025 draft; however, an intervening issue on January 12, 2025 might have disrupted this court's awareness; it is unclear whether

Judge Stanton had been relying on the Appellant's December 30, 2025 court filing, when he issued his January 16, 2026 court order, as it isn't specific on anything actually raised in the Appellant's court filings; it just largely makes reference to a court order from Chief Judge Swain granting an earlier IFP application from the Appellant.

mockThe Appellant would like the named procedural irregularities to lead to court recommendations for the General Counsel at the FLRA, for when the General Counsel starts considering whether or not to pursue the Appellant's pending unfair labor practice complaint and resulting pending appeal; an adverse decision by the General Counsel at the FLRA about pursuing an unfair labor practice complaint on behalf of the Appellant might require judicial review of some sort like US district court processing, following such a determination from a newly appointed FLRA General Counsel; the breaches of the CBA include far more than the 30 relevant performance based provisions that the Appellant was able to discover and then name in his April 27, 2007 electronic filing to the MSPB. The unusually long period of time involving the absence of an individual in the post of General Counsel at the FLRA is another unusual event that has/is being orchestrated on the part of the government.

Those unusual events are designed to make it exceptionally or uncharacteristically difficult for the Appellant to obtain his right to employment litigation reliefs as compared to other federal sector EEO complainants who received the protections that are intended, as this iteration of the delay involving a General Counsel at the FLRA has been in effect since at least January 2017, see Sample v. Diecks, 885 F.2d 1099 (3rd Cir. 1989). Concerning this request from the Appellant about the General Counsel at the FLRA, it is supposed to be during EEO counseling that claims upon which relief can be granted are created, as one of the responsibilities of the government, in its guise as an EEO counselor, see Kronisch v. US, 150 F. 3d 112, 121 (2nd Cir. 1998) ("A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, see Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084, 105 S. Ct. 1843, 85 L. Ed. 2d 142 (1985), but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence, see id. at 35 & n. 107").

It would appear as if all other similar administrative agencies where the Appellant might have obtained relief once upon a time have had their posts frequently filed several different times over since January 2017, but the FLRA hasn't, see Wainwright v. Torna, 455 US 586, 590 (1982). The defendant agency has been stalling on the Appellant's request for EEO counseling since July 13, 2023 and has caused numerous procedural irregularities ever since January 09, 2004 that always prevented the Appellant from receiving EEO counseling that made this current outcome possible, see Cvijetinovic v. Eberlin, 617 F. 3d 833, 837 (6th Cir. 2010) (""A claim may be held sufficiently novel when, at the time of its default, the legal tools, i.e., case law, necessary to conceive and argue the claim were not yet in existence and available to counse.""); these errors of commissions on the part of EEO counselors adversely impacted the Appellant's ability to pursue legal assistance from the union and FLRA on at least that one January 09, 2004 occasion.

The Appellant filed a February 02, 2026 draft motion for an extension of time request did not get resolved in Case Manager Yenni Liu's February 03, 2026 court order. The Appellant had previously highlighted the fact that his draft extension of time request had not been resolved and sought to add more draft material to the February 02, 2026 court filing a March 09, 2026 court filing that was also a draft extension of time request. In forcing the Appellant into a US district court for an injunction, the government's, in its guise as an EEO counselor, inaction the context of this case as a legal strategy, warrants sanctions under the reasoning in Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001), because the EEO counselor's role and responsibilities would otherwise be directly linked to the Appellant's ability to express claims upon which relief could be granted to a US district court judge even though that link is supposed to be connected to an administrative judge for the EEOC, when a pro se litigant is involved, see Sample v. Diecks, 885 F.2d 1099, 1107 (3rd Cir. 1989) ("Diecks' arguments lie with two other requirements of § 1983: that a federally secured right be implicated and that the defendant deprived the plaintiff, or caused the plaintiff to be deprived, of that right. See Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)").

Although an EEO counselor is not supposed have discretion in determining whether or not to provide EEO counseling once a prospective EEO complainant raises an issue to the defendant agency's EEO office for processing to the Appellant's current level of understanding, the Appellant is now forced into seeking a court ruling from a US district court which behave as discretionary that is an injunction. The EEO counselor would otherwise have the ability to suggest a more appropriate avenue for the EEO complainant, if the issue being raised is better pursued else. The Appellant started describing the role of the EEO counselor in the federal sector EEO process in his court filings that he submitted to the US district court below between February 02, 2025 and May 09, 2025, as he was learning researching its role, while preparing to decide upon a court filing that was going to be his injunction request to have the government, in its guise as an EEO counselor, move forward with his July 13, 2023 amended request for EEO counseling for which it had stalled.

The Appellant then made multiple additional communications with the government, in its guise as Ms. Karen Comfort of department level EEO up until approximately December 12, 2024. The Appellant then provided new bases in support of his July 13, 2023 amended request for EEO counseling, as he perceived them, including the revisiting of an email communication from him back close in time to October 19, 2006 that the defendant agency's EEO office either handled as a new issue or consolidated with a then pending formal EEO complaint by the Appellant. The Appellant has been irreparably harmed, because he was deprived of an employment protection protection that he was entitled to receive that comes with having the benefit of EEO counseling; this is so; in principal, the EEO counselor has no discretion in rather or not to afford EEO complainant, usually without counsel, EEO counseling; during EEO counseling, the EEO counselor has the responsibility to determine the issues, their associated legal claims, the art of drafting those legal claims, and then placing them into a report.

The EEO is evaluated by how these steps were taken in accordance with the standards specified in at least MD-110, Chapter 2. The EEO complainant is then supposed to be able to argue to the EEOC, in the form of both an administrative judge and the OFO component of the EEOC, the degree that the EEO counselor parted ways from MD-110, Chapter towards providing the EEO substandard counseling, while the agency might argue in the other direction. The arguments are then understood as to how the EEO counselor applied their responsibilities; however, the concept of responsibilities is removed in the context of the court system and replaced with the concept of discretion; from there, any standard isn't there for a pro se litigant to study and then argue a case against; somehow, discretion and court access are interchangeable; in this case, the government, in its guise as the OFO component of the EEOC, was at war with the government, in its guise as agency representatives, decisions to default, forfeit, and waive in this case.

Yet, the OFO component of the EEOC and sometimes an EEOC administrative judge engaged in ex parte communication with the agency and continually failed to threat the government, in its, as a party that had either or to respect their. And, this effort by the government, in its guise, caused the Appellant irreparable harm in these components of the government abandon their duties to protect the Appellant's employment protections, because the responsible management officials and defendant agency had abused them; and the ex parte communication opposed any success that the Appellant could ever achieve; similar to the June 20, 2025, August 06, 2025, and August 20, 2026 court orders from the US district court below, none of the material from the Appellant's administrative filings are discussed in any of their decisions; if anything from the Appellant's administrative filings were discussed, they're discussed too narrowly.

This filing is the Appellant's objection to the court order issued by this Court's clerk's office from someone other than Case Manager Yenni Liu, because it doesn't doesn't give an accurate description of the message that the Appellant sent to this Court on April 05, 2026.  Mock As part of one of his sanction requests under reasoning in within a February 02, 2026 and March 09, 2026 draft extension of time request to this Court, the Appellant asked for brief access to the cyberFeds database so that he would have access to all sort of Dewey Publications material, see Cvijetinovic v. Eberlin, 617 F. 3d 833, 837 (6th Cir. 2010) (""A claim may be held sufficiently novel when, at the time of its default, the legal tools, i.e., case law, necessary to conceive and argue the claim were not yet in existence and available to counse.""); Dewey Publications appears to have a specialty centered around federal sector civil service law.

Because the defendant agency's engaged legal misconduct that was going to adversely impact the Appellant's ability to make attempts to devise and then raise claims about procedural irregularities in the processing of his federal sector EEO complaint before an EEOC administrative judge and the OFO component of the EEOC on appeal, the Appellant was relegated into learning about the role of the EEO counselor in the EEO process from a training manual for EEO counselors and federal sector EEO investigators published by Dewey Publications, starting on approximately April 28, 2024 rather than close in time to October 19, 2006 or at other earlier occasions, including

while he was still occupying his position within the federal service, see Amadeo v. Zant, 486 US 214, 222 (1988) ("First, the District Court essentially found that the basis for petitioner's claim was "reasonably unknown" to petitioner's lawyers, Reed v. Ross, supra, at 14, because of the "objective factor" of " `some interference by officials.' " Murray v. Carrier, supra, at 488 (citation omitted)").

A statement from MD-110 at 3-11 reads "The information provided at the counseling stage largely determines whether aggrieved persons will utilize the EEO ADR process. As such, EEO ADR programs should ensure that aggrieved persons are informed of all of the various steps in the traditional EEO process before beginning the actual EEO ADR proceeding"; an EEO counselor never informed the Appellant about the initial interview in the EEO process, the limited inquiry in the EEO process, the final interview in the EEO process, the EEO counselor's report in the EEO process, and possibly an assortment of other items in he pre-complaint phase of the EEO process. A statements from the training manual for EEO counselors and investigators labeled as "The EEO counselors' and investigators' manual by Hadley, Ernest published 2001" from page 110 reads "The complainant is entitled to anonymity in the counseling stage of the complaint process. 29 CFR 1614/105(g). As a practical matter, the Counselor should advise the complainant of this right at the first contact and before the initial interview is scheduled because it may impact on the location of that interview. MD-110, Appendix at A-1. The complainant who is requesting anonymity will not want to have an interview conducted at his or her worksite".

An EEO counselor did not describe the purpose of the interview, define the interview, how the interview could be used to obtain information from the EEO complainant or other sources; an EEO counselor never defined the limited inquiry to the Appellant and how it could be used to gather information, how it was required to involved the EEO complainant, and how it was to be used to incorporate input from the EEO complainant, during an initial meeting with the Appellant, for example; an EEO counselor never held an initial meeting with the Appellant, despite multiple opportunities to have done so; the Appellant and that it was the responsibility of the EEO counselor to conduct the limited inquiry before any attempt at a resolution.

mockThe March 25, 2026 court order treats Judge Stanton as having resolved the Appellant's IFP application by way of a January 16, 2026 court order but totally disregarded several other issues that were critical to the context of the Appellant's case between February 02, 2026 and March 25, 2026, see Meghann M. v. U.S. Postal Service, EEOC Appeal No. 2023000887 (Feb. 28, 2023) ("While the formal complaint provided the two incidents as examples of the alleged ongoing harassment, a fair reading of the EEO Counselor's Report is reflective that Complainant's claims are not confined these events, but rather encompass a claim of ongoing harassment on a variety of matters, of which allegations 1 and 2 are merely examples") and Myles v. Astrue, 582 F.3d 672, 676 (7th Cir. 2009) ("But the ALJ may not simply ignore evidence. Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 540 (7th Cir.2003)").

The Appellant may have been referring these November 22, 2025 and November 24,

2025 draft motion requests for an extension of time to Case Manager Liu for processing by way of his February 02, 2026 court filing so that he would have an opportunity to prepare and then to send a completed version of his motion to Case Manager Liu for case management and the US district court below to be acknowledged and processed. However, one of the issues presiding in this case is concerning Judge Stanton's multiple failures to afford the Appellant any level of extra leeway in meeting the procedural rules governing litigation, see Enron Oil Corp. v. Diakuhara, 10 F. 3d 90, 96 (2nd Cir. 1993) ("A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge").

The defendant agency is otherwise in default; it would appear as if the US district court below and/or Judge Stanton have failed to protect the Appellant from waiving rights to be heard, because of his lack of knowledge, instead. The US district court's and/or Judge Stanton's actions of November 25, 2025 caused the US district court below to disregard the Appellant's November 22, 2025 and November 24, 2025 court filings; Judge Stanton had disregarded all of the Appellant's court filings from October 2025 and between February 02, 2025 and May 09, 2025 prior to his November 17, 2025 court order. Judge Stanton's appears to have withheld a court order until after January 12, 2026 and again cause the US district court below to again disregard the Appellant's November 22, 2025 and November 24, 2025 court filings so that it would actually be easier for the Appellant to have waived rights to be heard that might have been associated with Rule 62.1(c).

Rather than helping to facilitate the Appellant's goal of having Case Manager Liu supervise this case under Rule 62.1(b), FRAP 8(a)(1)(A), FRAP 12.1(b), and FRAP 12.1(a) at the US district court below or for Case Manager Liu to be in a position to remand this case to the US district court maintain it under her supervision pursuant to FRAP 12.1(b) by disregarding at least, the January 16, 2026 court order from Judge Stanton and its timing relative to January 12, 2026 mockin disregard of Rule 62.1(c) would appear to actually make it harder for the Appellant's motion request to have the US district court below limited to disregarding all material found and relied upon within the June 20, 2025 and August 06, 2025 court orders rather than giving him notice that the court is considering summary judgment and permitting him an opportunity to submit evidence on the topics raised in the June 20, 2025 and August 06, 2025 court orders.

Disregarding would appear to make it harder for the Appellant to have one of his sanction requests requests pursuant to the reasoning in, to have the US district court limited tomock possibly by having Case Manager Liu much harder for the Appellant to achieve Kopec v. Coughlin, 922 F. 2d 152, 155-156 (2nd Cir. 1991) ("When presented with material outside of the pleadings pursuant to a Rule 12(b)(6) motion to dismiss, the district court must either disregard such material or give the parties notice that the motion is being converted to one for summary judgment and permit the parties to submit evidence accordingly").

April 28, 2026